IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| United States of America, | ) | CR 06-1493-TUC-DCB (HCE) |
| Plaintiff, | ) | **REPORT & RECOMMENDATION** |
| vs. | ) | |
| Stephen Norman Brougham, Sr. | ) | |
| Defendant. | ) | |

On September 15, 2006, Defendant filed a Motion to Dismiss/Motion to Suppress-Unlawful Seizure requesting that this Court recommend dismissal of the charges against Defendant for the reason that Defendant's arrest lacked probable cause; and that evidence seized and statements obtained as a result of Defendant's arrest be suppressed. The issue of the suppression of evidence seized and statements obtained was not briefed by Defendant.

Defendant's Motion to Dismiss/Motion to Suppress–Unlawful Seizure was heard on October 16 and 20, 2006. For the following reasons, the Magistrate Judge recommends that the District Court deny Defendant's Motion to Dismiss/Motion to Suppress–Unlawful Seizure.

**I.     CHARGES**

Defendant is charged with intentionally and forcibly assaulting, resisting, opposing, impeding, intimidating and interfering with Border Patrol agent (hereinafter "BPA"). Cesar Olivares by using a deadly or dangerous weapon, i.e., a beer bottle, to threaten him while he performed his official duties, all in violation of 18 U.S.C. § 111(a),(b) (Count 1); intentionally and forcibly assaulting, resisting, opposing, impeding, intimidating and interfering with BPA Lisa Gross by using a deadly or dangerous weapon, i.e., a beer bottle, to threaten her while she performed her official duties, all in violation of 18 U.S.C. § 111(a),(b) (Count 2); and intentionally and forcibly assaulting resisting, opposing, impeding, intimidating and interfering with BPA Mariano Arguedas by struggling with him while he performed his official duties, such act constituting more than simple assault, all in violation of 18 U.S.C. § 111(a) (Count 3).

**II.     Defendant's Motion to Dismiss/Motion to Suppress – Unlawful Seizure**

Defendant seeks dismissal of the charges against him and the suppression of evidence seized and statements obtained as a result of his arrest alleged to lack requisite probable cause. Defendant did not brief or argue in his Motion that evidence seized or statements obtained post-arrest and post-*Miranda* should be suppressed.

**A.     The Hearing**

On October 16, 2006, BPAs Olivares, Gross, and Arguedas testified and Government Exhibits A and B (photos of a Border Patrol service vehicle) and Defense Exhibit 6 (diagram drawn by BPA Arguedas) were admitted into evidence. On October 20, 2006 BPAs John Eugene Bombright and Armando Garcia, and Defendant Stephen Norman Brougham, Sr., testified, and Defense Exhibits 1,2,3 (photos of Palomas Trail and Tubes Wash), 4 (interview with BPA Christopher Koshman), 7 (diagram drawn by BPA Garcia), 8 (diagram drawn by BPA Bombright), and 9 (diagram drawn by Defendant) were admitted.

**B.     Testimony**

On August 12, 2006 at 6:30 p.m., BPA Olivares received a call concerning a group of suspected illegal entrants located west of Palomas Trail and east of the San Pedro River. (October 16, 2006 Transcript (hereinafter "TR1"), pp. 12-14)  BPA Olivares, accompanied by BPA Bombright proceeded to go to that location in a marked Border Patrol vehicle driving on Palomas Trail, a public road.  They got as far and could go no further than Palomas Trail and Tubes Wash[1] because BPA Garcia, driving before them also responding to the call of suspected illegal entrants, disabled his marked Border Patrol vehicle when he submerged it in mud and water.  BPA Dodson had preceded BPA Garcia, was able to cross, and was stopped on the other side of Tubes Wash.  BPA Koshman in a marked Border Patrol vehicle arrived on the scene behind BPAs Olivares and Bombright.

After determining that BPA Garcia was safe and uninjured, a Border Patrol supervisor was called to provide tow assistance.  (TR1, p. 16) BPA Gross was later dispatched to assist BPA Garcia because her marked Border Patrol vehicle, an Excursion, had a winch on it. (TR1, p. 65)

Fifteen minutes after BPA Garcia got stuck and ten minutes after BPAs Olivares and Bombright arrived, yelling was heard from the east of the BPAs' positions.  The yelling included comments laced with profanities regarding the BPAs' status as such, their lack of intelligence having gotten the Border Patrol vehicle stuck, that the BPAs were on private property, and after observing the BPAs, the physical stature of BPA Olivares.[2]

---

[1]Tubes Wash is so called because of the drainage tubes that run under Palomas Trail. As explained by Assistant U.S. Attorney Jesse Figueroa, these tubes clog up and flood the area as apparently happened on August 12, 2006 (TR.1, p. 6)

[2]"Fucking Border Patrol Agents", "You're on my fucking property," "You fucking dumbasses", BPA Olivares was "too skinny to be a Border Patrol agent, too small to be a Border Patrol Agent."  (TR1, pp. 17, 20-22; October 20, 2006  Transcript (hereinafter "TR 2"), pp. 9, 42) Defendant characterized his banter as joking at first but after an exchange of words between Defendant's nephew and BPA Olivares, it got "a little heated." (TR2, pp. 80-

Approaching the agents were Defendant Stephen Norman Brougham, Sr., his son Stephen Brougham, Jr. (hereinafter "Jr."), and Defendant's nephew Nicholas Rockwood (hereinafter "Nephew").[3] Defendant and Nephew were each carrying a beer bottle. (TR1, pp. 19-21; TR2, pp. 10,43) The men were accompanied by an unleashed dog characterized as acting aggressively by barking and trying to bite the agents. (Id.) The dog charged BPA Olivares who responded by placing his hand on his firearm. (TR1, p. 21) Defendant directed profanity-laced comments at BPA Olivares regarding anticipated behaviour and presumed lack of experience.[4]

Defendant, Jr., and Nephew were five to ten feet from BPA Olivares continuing to yell profanities at him and closing in on him. BPA Olivares felt intimidated, in danger and apprehensive that the beer bottles carried by Defendant and Nephew could be used as weapons. (TR1, p. 22) BPAs Olivares and Bombright ordered Defendant, Jr. and Nephew to go back to their home and leave the BPAs alone. (TR1, p. 23; TR2, pp. 13-14) Defendant asked for and insisted that BPA Bombright give him his cell phone to call the BPAs' supervisor, which BPA Bombright declined. (TR2, pp.15-16) BPA Bombright, instead, called his supervisor. (TR2, pp. 15, 47)

BPA Gross arrived at this time and observed BPAs Olivares, Garcia, Koshman, and Bombright with their backs to the disabled vehicle with Defendant, Jr. and Nephew advancing on them shouting obscenities and the BPAs ordering the three to back off. (TR1, pp. 66-67)

---

81)

[3]Defendant's son and nephew are charged in separate indictments.

[4]"He [Defendant] said what are you going to fucking do? Are you going to fucking shoot the dog, you fucking trainee, you fucking rookie." (TR1, p. 21)

Jr. picked up a softball-sized rock and threw it full force at the agents nearly hitting BPA Garcia and damaging the disabled Border Patrol vehicle.[5]  (TR1, pp. 23-24, 68; TR2, pp. 20-21, 49) BPA Gross, in her concern for the BPAs' safety called for backup.  (TR1, p. 68) At this time BPA Arguedas, driving a marked Border Patrol vehicle eastbound on Highway 92 approaching Palomas Trail to assist in apprehending a group of suspected illegal entrants was dispatched to go to the Palomas Trail and Tubes Wash intersect to assist BPA Gross.  While responding to that location he heard BPA Gross on the radio requesting backup and sounding agitated.  (TR1, pp. 93-94)

In response to Jr.'s rock throwing assault, BPAs Olivares and Garcia attempted to subdue and arrest Jr.  (TR1, pp. 28-29, 68, 95; Defense Exhibit 4, p.11) Jr. struggled and resisted them by kicking his legs and throwing his elbows.  (TR1, pp. 29, 68-69)  Nephew began to advance to where Jr. was being subdued and BPA Bombright proceeded to prevent him from doing so noting that Nephew did not heed his orders to get down and had a beer bottle in his hand.  (TR2, p. 22)

Defendant testified that he thought BPAs Olivares and Garcia's efforts to subdue his Jr. were comical.[6]  (TR2, p. 84) Defendant approached them yelling profanities, to let go of his son, to leave his son alone, to get off his son, to get off his property.  (TR1, pp. 29, 68-69, 97) Defendant was still holding and waiving his beer bottle at chest level, although there is a question whether it was by the neck like a club or as one regularly holds a bottle so as not to spill its contents.  (TR1, pp. 29-30, 69, 97)  Nevertheless, BPA Olivares felt threatened that Defendant would strike him with the bottle.  (TR1, p.30)

---

[5] Damage to the vehicle is evidenced in Government's Exhibit A

[6] Defendant has been diagnosed as delusionary paranoid schizophrenic and takes Resperidol, Avant, Prolyxin for this condition; has had this condition since 1986 or 1987; has been treated at Southeast Arizona Behavioral Health Center; and Defendant was not taking his medication on August 12, 2006, the incident date. (TR. 2, pp. 66-67, 97)

- 5 -

BPA Gross then ordered Defendant to back away, to put the bottle down and to get down on the ground. Defendant continued yelling and cursing necessitating BPA Gross to draw her service-issued firearm. (TR1, pp. 30, 69) BPA Arguedas, concerned for the safety of the BPAs and the Defendant's potential use of the beer bottle as a club or as an edged weapon once broken, positioned himself next to BPA Gross holding his service-issued shotgun and loaded one round into it, pointing at the ground between Defendant and BPA Gross. (TR1, pp. 30-31, 70-71,98-99) Defendant did not heed BPA Gross' and Arguedas' orders to back off and get down on the ground. (TR1, pp. 70-72, 99) Defendant, after putting the bottle down on the ground, started running toward his residence.[7] This concerned BPAs Olivares, Gross and Arguedas in that Defendant could be attempting to escape; was retrieving a gun or other weapon; or was attempting to fortify himself in his residence. (TR1, pp. 32, 73, 100) Consequently, BPAs Gross and Arguedas pursued Defendant and as they neared him, Defendant turned and brought his hands up in a combative posture. (TR1, p. 100) BPA Gross was on Defendant's right side while BPA Arguedas was to his left. Both BPAs tried to get Defendant down but Defendant struggled with them by pushing them off and resisting being handcuffed. (TR1, pp. 73, 100-101)

Every BPA who responded on August 12, 2006 to the Palomas Trail and Tubes Wash intersect was dressed in full Border Patrol uniform with badge, patches, and credentials identifying each as a BPA. Every vehicle driven or occupied by every BPA at the Palomas Trail and Tubes Wash intersect was a marked Border Patrol vehicle.

BPA Olivares testified that before August 12, 2006, he had never met nor previously been assaulted by Defendant, nor did he have information Defendant carried weapons. (TR1, p. 33) BPA Gross testified that before August 12, 2006, she had never had contact with nor had she heard about Defendant threatening anyone. (TR1, p. 33) BPA Arguedas cannot

---

[7]Defendant testified that the BPAs had ordered him, Jr. and Nephew to leave and that was what he was doing. (TR2, p. 96)

remember having had contact with or having been threatened by Defendant before August 12, 2006.[8] (TR1, p. 75) BPA Bombright had never heard of Defendant before August 12, 2006. (TR2, pp. 35-36) BPA Garcia did not know nor had he ever heard of Defendant before the incident. (TR2, p.42) BPA Koshman met Defendant for the first time on August 12, 2006. (Defense Exhibit 4, p.3)

### C. Discussion

The singular question in the instant motion is whether there was probable cause to believe Defendant has committed any crimes. The essence of probable cause is two-fold: (1) a reasonable ground for belief of guilt; and (2) the belief of guilt must be particularized with respect to the person to be seized. *Ybarra v. Illinois,* 444 U.S. 85, 91 (1979); *Brinegar v. United States,* 338 U.S. 160, 175 (1949). In determining whether there is probable cause to arrest an individual, the events leading up to the arrest must be examined from the standpoint of an objectively reasonable police officer. *Devenpeck v. Alford,* 543 U.S. 146, 153 (2004); *Maryland v. Pringle,* 540 U.S. 366, 371 (2003); *Ornelas v. United States,* 517 U.S. 690, 696 (1996). The facts and circumstances within an officer's knowledge must be sufficient to warrant a prudent person to believe a suspect has committed, is committing, or is about to commit a crime. *United States v. Greene,* 783 F.2d 1364, 1367 (9th Cir. 1986), *cert. denied* 476 U.S. 1185 (1986) (*citing Michigan v. De Fillippo,* 443 U.S. 31 (1979)). The arresting officer need not have personal knowledge of all of the facts sufficient to constitute probable cause. *United States v. Bernard,* 623 F.2d 551, 560-561 (9th Cir. 1979). Moreover, probable cause may be based on the collective knowledge of participating officers involved in an investigation and all of the reasonable inferences drawn therefrom. *Id.*; *United States v.*

---

[8]Defendant testified that he had had one previous contact with BPA Arguedas when he "walked him out of waist-deep mud once. I was looking for my buffalo and he thought I was possibly a Mexican and he got himself in thicker than he could get out. And I went and helped him out once." (TR2, p.108)

*Butler,* 74 F.3d 916 (9th Cir. 1996); *United States v. Hoyos,* 892 F.2d 1387 (9th Cir. 1989), *overruled on other grounds by United States v. Ruiz,* 257 F.3d 1030 (9th Cir. 2001).

The cumulative facts of August 12, 2006 from the BPAs' perspective is that Defendant cursed and yelled at them while they were awaiting assistance in pulling the disabled Border Patrol vehicle from the wash. The BPAs were at Palomas Trail and Tubes Wash because they were enroute to interdict a group of suspected illegal aliens in the area.

Defendant along with his son and nephew advanced on the BPAs and would not heed the agents' orders to leave; back off; or get down on the ground. Defendant held a beer bottle in his hand and waved the bottle such that BPA Olivares was apprehensive about and intimidated by the Defendant and Defendant's actions towards him.

Thereafter, Defendant's son threw a rock at the BPAs narrowly missing BPA Garcia and instead striking the immobilized border patrol vehicle and damaging it. BPAs Garcia and Koshman attempted to subdue and arrest Jr. for the rock-throwing assault and damage.

Defendant testified that he did not see his son throw the rock. (TR2, pp. 93, 103) Defendant testified that he did say to BPAs Garcia and Koshman to leave his son alone and that his son had not done anything wrong. (TR2, p. 104)

Defendant's actions towards the BPAs subduing his son prompted BPA Gross to draw her service-issued firearm and BPA Arguedas his service-issued shotgun to keep him from advancing. Defendant then turned around and began running in the direction of his residence. It was unknown to BPAs Olivares, Gross or Arguedas whether Defendant was going to attempt to escape, retrieve a gun or other weapon or to fortify himself within his residence.

From the standpoint of an objectively reasonable and prudent Border Patrol officer, there were sufficient facts and circumstances to believe that Defendant had committed, was committing, or was about to commit the crimes with which he is charged, and thus probable cause existed to arrest the Defendant.

**III.     RECOMMENDATION**

For the reasons stated above, the Magistrate Judge recommends that the District Court deny Defendant's Motion to Dismiss/Motion to Suppress–Unlawful Seizure (Doc. Nos. 13 & 15).

Pursuant to 28 U.S.C. §636(B) and Rule 59 of the Federal Rules of Criminal Procedure, any party may serve and file written objections within ten days after being served with a copy of this Report and Recommendation.  If objections are filed, the parties should use the following case number: **CR 06-1493-TUC-DCB.**

Failure to file objections in accordance with Fed.R.Cr.P. 59 will result in waiver of the right to review.

The Clerk of Court is directed to send a copy of this Report and Recommendation to the parties and/or their counsel.

DATED this 8th day of November, 2006.

_____
Héctor C. Estrada
United States Magistrate Judge